# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00722-CR

**Ralph Langley, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
### NO. D-1-DC-08-200637, HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Ralph Langley of murder, *see* Tex. Penal Code Ann. § 19.02 (West 2003), and sentenced him to forty-three years in prison. Langley argues that the trial court erred in admitting certain evidence, in deviating from statutorily mandated language in submitting the parole law instruction to the jury, in failing to comply with the code of criminal procedure, and in failing to clarify the parole law instruction in response to the jury's written request. We affirm the judgment of the district court.

Since the spring of 2007, Ralph Langley and his wife, Lori, had been living in separate residences and were in the process of getting a divorce. Langley remained in the family home with his nineteen-year-old son, Joshua, and Lori moved into a residence a short distance away. The couple had another adult daughter, Sarah, who resided elsewhere.

In September 2007, Langley bought a handgun. At some point after this purchase, Langley showed the gun to his daughter, Sarah, and told her that he wanted to kill both her mom

and himself.  Upon hearing this, Sarah asked Langley to sign a pact.  Accordingly, he and his daughter signed the following note, written by Langley:  "I will kill neither Lori nor myself—(she frankly is not worth it . . . )."

On February 1, 2008, Langley walked out of his residence, where he lived with his son Joshua.  Joshua heard the door open and close and saw Langley getting into his pickup truck. Joshua approached Langley and asked where he was going.  Langley replied that he was "going to go kill [Joshua's] mother." Joshua attempted to calm Langley and prevent him from leaving, but was unsuccessful.  A few minutes later, Langley returned home, gun in hand, and "said that he shot her" and that "he was going to kill himself."

Langley went inside the home, put the gun on the dining room table, and called 911. Langley told the dispatcher that he had just shot and killed his estranged wife.  He explained that they were going through a divorce and that "it all went downhill when [Lori] decided to find somebody else."

When police arrived at Lori's residence, they found her body.  She had sustained multiple gunshot wounds and was pronounced dead at the scene.  Police officers also arrived at Langley's residence. They detained both Langley and Joshua. When a search warrant was obtained, police also conducted a search of Langley's house, from which they recovered the gun, Langley's wallet, an ammunition magazine, and the written pact signed by Langley and his daughter.  A DPS firearm and tool mark examiner later determined that the bullet recovered from Lori's body, as well as a second bullet and the cartridge case found at the crime scene, had all been fired from the gun that had been recovered from Langley's home.

On February 26, 2008, Langley was charged by indictment for the offense of murder. *See id.* On October 30, 2008, a jury found Langley guilty as charged and, on October 31, 2008, assessed a sentence of forty-three years in prison. Langley appeals, challenging the admission of the pact with this daughter, the trial court's parole law submission to the jury, and the procedure used and response given following a question from the jury during jury deliberations.

In his first and second issues, Langley argues that the trial court erred in admitting the pact between him and his daughter because it was seized in violation of articles 1.06 and 18.02(10) of the code of criminal procedure. Langley argues that the pact is a "personal note" or "personal writing" and, as such, cannot be recovered pursuant to a search warrant. Further, according to Langley, because the search warrant expressly authorized police to search for personal notes, which is expressly prohibited by the code of criminal procedure, the warrant amounted to "an abuse of the warrant procedure," making the entire warrant invalid, and making any evidence seized pursuant to that warrant inadmissible.

Article 18.02(10) provides:

A search warrant may be issued to search for and seize:

. . .

(10)    property or items, except the personal writings by the accused, constituting evidence of an offense or constituting evidence tending to show that a particular person committed an offense . . . .

Tex. Code Crim. Proc. Ann. art. 18.02(10) (West 2005). Courts have construed the term "personal writings" to mean those writings such as diaries, memos, and journals that were not intended by the writer to be published to third parties. *Mullican v. State*, 157 S.W.3d 870,

3

873 (Tex. App.—Fort Worth 2005, pet. ref'd); *Porath v. State*, 148 S.W.3d 402, 409 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *Reeves v. State*, 969 S.W.2d 471, 486 (Tex. App.—Waco 1998, pet. ref'd), *cert. denied*, 526 U.S. 1068 (1999). The purpose of the exception, courts have concluded, is to provide protection from searches designed to find written evidence by which a person might incriminate himself. *Porath*, 148 S.W.3d at 409 (citing *Reeves*, 969 S.W.2d at 483). Citing these principles, the Dallas Court of Appeals held that letters, written by the defendant, that had been stamped, sealed, addressed, and were ready to mail did not qualify as personal writings, explaining that the determining factor is the writer's intent, not whether the writings were actually read. *Cavazos v. State*, No. 05-05-01352-CR, 2006 Tex. App. LEXIS 9332, at *29 (Tex. App.—Dallas Oct. 27, 2006, pet. ref'd) (mem. op., not designated for publication).

Here, applying the same principle that a writing does not qualify as a "personal writing" within the meaning of article 18.02(10) if its author intends that it be read by others, we hold that the pact, written by Langley—but signed by both Langley and his daughter—does not qualify as a personal writing. The pact, an agreement between Langley and Sarah, was written at Sarah's request. The pact was not only intended to be read by a third party, but was actually both read and signed by a third party. In addition, police recovered the note in the kitchen area of the family home among other papers. The record shows that the note was easily accessible to Langley's son, Joshua, and indeed, Joshua testified that he thought he had seen the note before. In these circumstances, the pact does not qualify as a "personal writing" within the meaning of article 18.02(10). Accordingly, we overrule Langley's first and second issues.

4

In his third issue, Langley argues that the district court erred in rearranging statutorily mandated language in the parole law instruction.[1] The specific paragraph at issue is the following:

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole.

Langley complains that the entire paragraph set out above was moved to the end of the instruction in what he contends was an attempt to "highlight the informational paragraph while diminishing the impact of the admonishment paragraph, leading the jury to wonder whether it could discuss during its deliberations the minimum time that the defendant would be required to serve before he would become eligible for parole." Langley concludes: "Ultimately, this error led the jury to wonder whether it could arrive at a sentencing recommendation by deciding how much time Appellant should serve and then doubling that number."

Even accepting Langley's argument that the district court erred by not submitting the parole instruction exactly as set out in article 37.07(4)(a) of the code of criminal procedure, reversal is not warranted. Where, as here, no objection is made to the charge at trial, we reverse for charge error only if the record shows that the error caused egregious harm. *See Almanza v. State*,

---

[1] In the heading to this section, Langley also complains about the omission of statutorily mandated language from the instruction, but his briefing only addresses the rearrangement of the paragraphs, not any omission from the charge. To the extent that Langley also argues that he was harmed by the omission of the phrases "or 30 years, whichever is less" and "if he is sentenced to a term of imprisonment," this argument has been inadequately briefed and is waived. *See* Tex. R. App. P. 38.1(i).

686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Harm must be actual harm and must be evidenced in the record. *Id.*

Here, there is no indication that relocating the paragraph would have adversely affected the jury's sentencing decision. The portion of the instruction at issue simply explains when the defendant would become eligible for parole. It neither suggests that the jury should arrive at a sentencing recommendation by deciding how much time Langley should serve and then doubling that number nor negates the admonishment set out in the previous paragraph, which prohibits the jury from considering how the parole law would be applied to Langley. Because the jury is presumed to follow a trial court's instructions as given, *see Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998), here we presume that the jury followed the trial court's instructions not to consider how the parole law would have specifically applied to Langley. More importantly, however, Langley cites to nothing in the record—and our review has revealed nothing in the record—that shows actual harm suffered as a result of the paragraph rearrangement, as required by *Almanza*. *See* 686 S.W.2d at 171. Accordingly, we overrule Langley's third issue.

Langley's fourth and fifth issues concern a note sent by the jury to the trial court in which the jury requested clarification of the parole law instruction. Langley argues that the trial court failed to follow section 36.27 of the code of criminal procedure in determining how to respond and that the court erred in the substance of its response, refusing to provide clarification to the jury. *See* Tex. Code Crim. Proc. Ann. art. 36.27 (West 2006).

The jury's note read as follows:

Paragraph 5 says

> "You may consider the existence of the parole law and good conduct time."
> It also says
> "You are not to consider the manner in which parole law may be applied to this particular defendant."
> Please clarify. For example, can we say, "If the defendant was sentenced X, he may only serve ½X" as part of our deliberation.

The trial court responded with the following written instruction:

> In regard to your jury questions 2 and 3, the Court instructs you that all the law that is applicable to this case is contained in the Court's Charge on Punishment.

> Section 36.27 of the code of criminal procedure provides, in relevant part:

> The court shall answer any such communication in writing, and before giving such answer to the jury shall use reasonable diligence to secure the presence of the defendant and his counsel, and shall first submit the question and also submit his answer to the same to the defendant or his counsel or objections and exceptions, in the same manner as any other written instructions are submitted to such counsel, before the court gives such answer to the jury, but if he is unable to secure the presence of the defendant and his counsel, then he shall proceed to answer the same as he deems proper. The written instruction or answer to the communication shall be read in open court unless expressly waived by the defendant.

> All such proceedings in felony cases shall be a part of the record and recorded by the court reporter.

*Id.* According to Langley, with the exception of the "in writing" requirement, the trial court failed to follow any of these procedures.

Although Langley is correct that "the record fails to reflect that the trial court complied with any of the remaining requirements of the statute," it is also true that the record fails to reflect that the trial court did not comply with the requirements. The record is simply silent. Nothing in the record shows whether or when Langley was notified about the jury's question,

7

and there is no indication that Langley objected to the trial court's answer. When, as here, we are presented with a silent record, we presume not that the court failed to comply with article 36.27, as Langley suggests, but that the court did, indeed, comply with article 36.27's requirements. *See Word v. State*, 206 S.W.3d 646, 652 (Tex. Crim. App. 2006). In addition, there is no indication that Langley objected to the trial court's failure to make all article 36.27 proceedings "a part of the record and recorded by the court reporter," and he has, therefore, failed to preserve this issue for review. *See id.*

As to the substance of the court's answer, which declined to further clarify the statutory language of article 36.27, we also find no error. The trial court refused to elaborate on—or add to—the statutorily mandated language in article 36.27. Rather, the court referred the jury back to the language as set out in article 36.27. Langley points to nothing in the record to show that he suffered actual harm by the trial court's refusal to deviate from the statutorily mandated language. *See Almanza*, 686 S.W.2d at 171. Accordingly, we overrule Langley's fourth and fifth issues.

Having overruled each of Langley's issues, we affirm the judgment of conviction.

_____

G. Alan Waldrop, Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Affirmed

Filed: April 23, 2010

Do Not Publish